## SUPREME COURT.

### SALINGER agt. LUSK.

An *answer* (verified) in slander which merely states that the defendant did not utter precise words, at the precise time, *and* in the particular place *and* manner stated in the complaint, is simply swearing that the complaint is not *all* true. How much of it is true it does not admit nor deny. It may, therefore, without being literally false, leave a good cause of action undenied. It is not equivalent to the general issue as formerly understood. It is *insufficient* as containing a negative pregnant, and not controverting the allegations of the complaint separately and substantially.

Where the plaintiff requires a verification he is entitled to have the answer drawn with legal certainty and precision. The defendant must meet the *substance and import*, not the letters and figures of the complaint. Any other construction would result in a virtual repeal of the Code so far as it authorizes a *verification*.

*It seems*, that under the present Code, allowing the principle of general denial, the courts might sanction the *old form of pleading the general issue.*

But how is such an insufficient answer now to be disposed of? *Held*, that the true construction, grammatical as well as legal, of § 153, gives a *demurrer* to an answer in all cases of *insufficiency*, whether it appears in a *denial* or in *new matter*. (*The cases upon this point reviewed and the question fully discussed.*)

*Brooklyn Special Term, January* 1853. The complaint sets forth several sets of slanderous words, which it alleges defendant uttered and published of and concerning the plaintiff. The answer denies the allegation contained in the complaint, that on or about the fourth day of May last, in the city of Williamsburgh in the county of Kings, he, the defendant, did speak, utter and publish, of and concerning the plaintiff, in a public manner, *and* in the presence and hearing of divers persons, the following false, malicious and defamatory words, to wit: "that (meaning the plaintiff) is Salinger." "He (meaning plaintiff) has stolen the horse (meaning a certain horse then had in his possession) arrest him." "That's Salinger, he has stolen the horse; he has stolen that horse; arrest him you" (meaning a certain officer addressed) "better arrest him." The pleadings are verified.

To this answer the plaintiff demurs.

       E. D. CULVER, *for Plaintiff.*
       H. D. BIRDSALL, *for Defendant.*

Salinger agt. Lusk.

BARCULO, Justice.—That this answer, upon general principles of pleading, is clearly bad, can not be doubted. It simply states that the defendant did not utter the precise words, at the precise time, and in the particular place and manner stated in the complaint. How much of the plaintiff's complaint is true, the defendant does not admit nor deny. He simply swears that it is not *all* true. This answer may, therefore, without being literally false, leave a good cause of action undenied. If we tolerate this mode of pleading, we abolish the substantial benefits of a verification. For if three-fourths of this answer should prove to be false, and the other one-fourth true, no legal perjury could have been committed.

If the answer had not been verified, I should have been disposed to let it stand, as equivalent to the general issue or general denial, within the decision of Kellogg agt. Church (4 *How. Pr. R.* 339). By that mode substantial justice could be done; for if the plaintiff does not require the oath, the defendant has a right to deny the whole demand or charge in general terms, whether it is true or not, and put the plaintiff to his proof. But where the plaintiff requires a verification, he is entitled to have the answer drawn with legal certainty and precision, so that the defendant's conscience may be brought in direct contact with every material part. The defendant must meet the substance and import, not the letters and figures, of the complaint. Any other construction would result in a virtual repeal of the Code, so far as it authorizes a verification.

But lest I should be misunderstood, I will add in this connection that I do not, by any means, consider this answer equal nor equivalent to the general issue as it was formerly understood. That plea put in issue all the material facts in the declaration. Although in its terms it said, the defendant " is not guilty of the said supposed grievances above laid to his charge, or any, or either of them, or any part thereof in manner and form as the plaintiff hath above thereof complained against him;" it was construed not merely to deny the actual *form and manner* of the charge, but to controvert the *substance* of every cause of action contained in the declaration. As applied to the case before us, that plea would put in issue the uttering of each set of slander-

ous words, not only at the time and place and under the circumstance detailed in the complaint, but at *any* time or *place*, or under *any* circumstances which would render them actionable. For, as time and place and presence are not material, the plea of the general issue, being founded on common sense, looks beyond these matters and controverts only the substantial allegations of the plaintiff. If the defendant had answered in the terms of the old general issue, and sworn to the truth of the answer, he would have sworn, in substance, that it was not true that he ever uttered either set of slanderous words charged in the complaint. But as it is, he has sworn only that he is not guilty of all that is alleged under the particular circumstance named in the complaint, leaving it very possible, that he is guilty under circumstances slightly and immaterially variant.

The wit of man has never yet devised, and it may well be doubted whether the present generation, with all its labors will ever bring forth, any formula equal to the old general issue, for the purposes of a general denial. It united the great elements of all good pleading, brevity, simplicity and comprehensiveness. And if the principle of general denial is to be reinstated, of which we have all the encouragement derivable from the fact that it has stood firmly as the law of the land, since the sixth day of May last, notwithstanding its previous unsteadiness, I see no reason why the courts should not sanction the old form of pleading the general issue, and thus put an end to this vexatious and useless course of litigation.

II. The more difficult question, however, relates to the proper mode of disposing of such an insufficient answer. It is contended that a demurrer will not lie; and this argument is rendered plausible by the latter alteration in the Code, and by at least one express adjudication (Thomas agt. Harrop 7 *How. Pr. R.* 57). I had occasion to pass upon this question, under one of the former phases of the Code, in the case of Hopkins agt. Everett (6 *How. Pr. R.* 159). It was there held that a demurrer would lie to a *denial* in an answer for defects similar to those appearing in the present case. That construction of the Code was affirmed by the general term of this district on appeal. But since that, the section bearing upon this question has been considerably modified,

Salinger agt. Lusk.

and the alteration would seem to indicate an intention to avoid or annul our former decision.

I am, however, still inclined to the opinion, after a careful consideration of the subject, that, although it may have been and probably was otherwise intended, the true construction, grammatical as well as legal, of section 153, gives a demurrer to an answer in all cases of *insufficiency*, whether it appears in a denial or in new matter. (§ 153.) "When the answer contains new matter constituting a counter claim, the plaintiff may, within twenty days, reply to such new matter, denying generally or specifically each allegation controverted by him, or any knowledge or information thereof sufficient to form a belief; and he may allege in ordinary and concise language, without repetition, any new matter, not inconsistent with the complaint, constituting a defence to such new matter in the answer; or he may demur to the same for insufficiency, stating in his demurrer the grounds thereof; and the plaintiff may demur to one or more of several counter claims set up in the answer, and reply to the residue."

It declares, as I understand it, that when an answer sets up a counter claim, the plaintiff may reply; and that he may demur to the answer for insufficiency. It will be observed that the chapter is headed " The Reply," and that the section begins with the words " When the answer," &c., and, after providing for a reply to all counter claims, that clause of the sentence is terminated by a semicolon; and this clause next follows: "or he may demur to the *same* for insufficiency, stating in his demurrer the grounds thereof."

Now I suppose that, according to the principles that connect adjectives with their antecedents, which principles, as they have not undergone the process of codification, retain some degree of permanency, the word 'same' must refer to the word 'answer,' which preceded it.

2. It seems to me too that, in a legal sense, the section would speak more correctly and intelligibly, if it should be deemed to speak of a demurrer to an answer,- rather than of a demurrer to new matter, or to a counter claim. We perceive the appropriateness of language, when it applies a demurrer to a *pleading*,

but not so, when it applies it to certain matters which may be contained in a pleading.

3. There is just as much reason for allowing a demurrer to an answer which does not contain new matter, as there is for allowing it to a reply. Section 155 provides "if a reply of the plaintiff to any defence set up by the answer of the defendant be insufficient, the defendant may demur thereto, and shall state the grounds thereof." This clearly does not restrict the defendant to the insufficiency of *new matter*, but gives him full liberty to demur to the reply in all cases of insufficiency.

But perhaps it may be contended that insufficiency can only exist in the mode of setting up new matter. To this it may be replied that it is contrary to *reason* and *authority*.

Upon what principle can we refuse a demurrer to either party who claims that his adversary has imperfectly controverted or answered his prior pleading? Why should we send the parties with their witnesses to the circuit to try an immaterial issue? Certainly there is no good reason for it. On the contrary, it is sound policy, in my judgment, to keep causes away from the circuit until a material issue of fact is joined, and whenever a demurrer tends to narrow down the issues, and bring the pleadings into proper shape, it is the safest and best means of attaining the truth and justice of the case. We must bear it in mind, that all the forms of pleading are devised for the purpose of ascertaining the rights of the parties, with reference to the administration of exact justice, and all the rules we adopt calculated to defeat that end, are, to that extent, a direct perversion of the powers of the court, and a violation of the first principles of the law.

What better mode than demurrer have we to reach defects in a pleading. Take the case before us as an illustration. The answer is not a sham, to be stricken out under section 152; nor is it frivolous, so as to fall within section 247. It is an answer which aims at a material defence, but the defence is imperfectly stated. What shall we do with it? Shall we say it comes within section 168 and does not *controvert* the complaint, and permit the plaintiff to take judgment? If so, we may do great injustice, by cutting off a meritorious defence, because of a

Salinger agt. Lusk.

mere defect.in the phraseology of the answer. Is it not better to entertain the objection on demurrer, and give the party leave to amend, by making that certain which is now uncertain? I conceive this to be the only remedy that reaches the evil. It is not a case that can be disregarded as an immaterial variance at the trial; nor does it fall under any of the sections in regard to amendments which can be made at or after the trial. It is possible, perhaps, that the defect might be reached under section 160, by ordering an amendment to make it more "definite and certain." But that remedy is somewhat doubtful, and there is quite as much reason for supposing that that section refers to new matter, as that section 153 does. Besides, we are not told how the question is to be presented to the court under section 160. All we learn is that "when the allegations of a pleading are so indefinite or uncertain, that the precise nature of the charge or defence is not apparent, the court may require the pleading to be made definite and certain, by amendment." Why may not this be done on demurrer? It is the old legitimate office of that pleading. There is nothing in the Code to prevent this course being adopted. It is for the courts to determine what is the most convenient and suitable mode of raising the question.

We have yet to look into the authorities, to see what meaning is attached to *insufficiency* in a pleading; and especially to ascertain whether it is or not peculiarly applicable to the statement of new matter.

In common law pleadings the word was sometimes used. A pleading was said to be defective, uncertain, or bad, but it was not generally called insufficient. In chancery, however, the word was extensively used, in connection with answers which were called insufficient, when they did not distinctly and fully respond to the allegations or interrogatories in the bill. But it was always applied to those answers which did not explicitly respond, either by admitting or denying specifically, the matters charged or inquired of by the complainant, and was not deemed applicable to the statement of *new matter* (1 *Hoff. Ch. Pr. 272;* 1 *Paige,* 556).

In the last of these cases, Chancellor WALWORTH says: "The part of the answer to which these exceptions are taken is in no

way responsive to the bill, and was not called for by the com-plaint. It relates to a distinct claim set up on the part of the defendant by way of set off. *If the defendant sets up a distinct matter by way of avoidance, and which is not called for by the bill, the answer can not be excepted to for insufficiency.*" The rule is further illustrated by the case of Davis vs. Mapes (2 *Paige,* 106). The bill charged that William Coffin, the executor, con-tinued after the issuing of a fi. fa. and until the 5th of September, to sell and dispose of the said goods and merchandise, *and* to appropriate the proceeds thereof, without any hindrance on the part of the said James Mapes, or of the said sheriff, and without accounting for the same to said Mapes or the said sheriff, but applying the same, or a part thereof, to the support of the said Coffin. The defendant answered that " he denied that the said Coffin continued after the issuing the said fi. fa., and until the said 5th day of September, to sell and dispose of the said goods and merchandise, and to appropriate the proceeds thereof, with-out hindrance on the part of the defendant, or the said sheriff; but, on the contrary, applying the same goods and merchandise to the maintenance of the said Coffin." This part of the answer was excepted to for *insufficiency.* Upon this the chancellor thus speaks: " The fifth exception is also well taken. In this case the defendant has answered literally as to a charge in the bill, laid to be done with divers circumstances. He should have answered explicitly each distinct part of the charge; as whether Coffin did at any time, and if at any, at what time between the issuing of the execution and the fire, sell the goods levied on, or any part thereof; and if any, what part; and whether the de-fendant or the sheriff had knowledge of the fact, and permitted him to do so, or attempted to hinder him. And if he sold any goods, whether he accounted with, and paid over to the sheriff or to the defendant Mapes, the proceeds thereof, or otherwise. The answer as it now stands is a negative pregnant, and the material part of the charge may be true. As a general rule, when the charge in the bill embraces several particulars, the answer should be in the disjunctive, denying each particular, or admitting some and denying the others, according to the fact " (*vide* 1 *Hoff. Ch. Pr.* 271). That case contains the whole doc-

Salinger agt. Lusk.

trine on the subject. I regard it as an unanswerable authority, to establish the proposition that *insufficiency* may be *properly* if not exclusively, predicated, of an answer which merely *responds* to a complaint, whether by *admission* or *denial* without containing any counter claim, or any other novelty. I deem it also an authority, if any were needed, to show that the answer under consideration is insufficient, as containing a negative pregnant, and not controverting the allegations of the complaint separately, and substantially.

If, therefore, the term "insufficiency" had a fixed and definite meaning under the old chancery system, and was applicable peculiarly to a defective denial in an answer, what right have we now to say, that its meaning has been wholly changed, and that it refers only to new matter, or a counter claim? I am not aware of any legislative enactment which has done this violence to an old familiar term; nor do I think it has been transformed by implication, if that were possible. We should rather infer the contrary, from the circumstance that an attempt has been made to ingraft upon common law proceedings the principles and names of equity pleadings.

We must, therefore, assume according to established rules of construction, that the authors of the Code, understood that this term had a settled meaning, as has been shown; and that they employed it, in relation to an answer, to express defects of the character which had hitherto been known to the law as insufficiencies, and that they substituted demurrers instead of exceptions, as a more convenient mode of reforming such objectionable pleadings. It is not designed to say that demurrers are *confined* to denials. On the contrary, it is supposed that a demurrer is the proper mode of objecting to any entire defence, whether composed of new matters, counter claims, or mere denials, which not being liable to the charge of sham, or frivolous, are, nevertheless, so imperfectly stated as not to present a distinct, material issue. A demurrer to a reply stands upon the same foundations.

There is another view of the subject which has strongly and repeatedly suggested itself, during the examination of this case. The power to entertain a demurrer as a means of testing the

Salinger agt. Lusk.

legal sufficiency of a pleading, is a common law power apper-
taining to this court, of which it can only be deprived by express
legislation. Now the Code does not take away this authority,
nor is there any thing in the Code inconsistent with its exercise.
It is, of course, limited to those cases, which, according to the
Code, may be deemed bad pleading. Within such limits, how-
ever, no good reason appears, why it may not be employed. If,
for instance, that provision which requires the defendant to an-
swer by " a general or specific denial of each material allegation
.of the complaint controverted by the defendant, or of any know-
ledge or information thereof sufficient to form a belief," be
violated, why may not the defect be reached by a demurrer? Is
it said that other remedies are provided? To this I answer *first*,
that the fact that some defects may be reached by motion to
strike out as frivolous, sham, &c., is no reason why we should
deem demurrers abolished by implication. For these same
motions, or some of them, were coexistent with demurrers long
before the present system was thought of. *Secondly*, there are
many defects to which none of these motions can be properly
applied. It can be easily proved, from the reported adjudications,
that this plaintiff could not get rid of this answer by either of
the summary modes pointed out by the Code. If he moved to
strike out the answer as a sham, he would be told that it could
not be done, because it did not appear to be clearly *false*, as was
done in Nichols agt. Jones (6 *How. Pr. R.* 357), and in Seward
agt. Miller (6 *id.* 312). If he claimed that it was frivolous, he
would be met with the case of Temple agt. Murrray (6 *id.* 329),
where it is said that " in case of doubt, the court will not adopt
the stringent and summary mode of giving judgment by striking
out a plea as frivolous," and numerous other cases where it is
declared that the frivolousness must be plain and palpable, so as
not to admit of doubt or argument; or he may encounter the
case of Darrow vs. Miller (3 *Code R.* 241), where it was held
that an answer could not be struck out as frivolous, unless it
was also a " sham pleading;" or the court may tell him as they
did in Scovell vs. Howell (2 *Code R.* 33), that the answer was
*insufficient*, and " if the plaintiff had demurred, he undoubtedly
would have succeeded; but he has mistaken his remedy."

Salinger agt. Lusk.

It is clear that an answer of this kind can not be got rid of except by demurrer. If that will not lie, the parties must go to the circuit and dispose of the issue as well as they can.

Demurrers are retained by the Code as a part of the system of pleading. It provides that parties may demur under certain circumstances; but it does not *forbid* a demurrer under other circumstances. The original Code of 1848, did provide, as I understand it, by section 132, that a demurrer would only lie to a complaint, but that section is repealed.

The superiority of a demurrer to the other modes of disposing of a pleading of this character, is obvious. The proceedings on demurrer are well understood; a decision is a *judgment* from which *either* party can appeal. On motion to strike out, the practice is unsettled and difficult; the decision in some cases is deemed an *order*, and in others a *judgment ;* the right of appeal is uncertain, and in many cases denied, to at least one of the parties (Bedell agt. Stickles, 4 *How. Pr. R.* 432). Moreover, under our system of holding special terms every month, a cause can be heard with the same convenience and dispatch on demurrer as it can be on motion. I am satisfied that this is a case where, in the language of Justice CRIPPEN, "the safer rule is to stand by the land marks of the common law, and protect them against crude and hasty legislation" (7 *Howard's Pr. R.* 281).

I am aware that it is stated in some of the books on practice, that it has been said by some of the judges of the Superior Court of the city of New York—and that it has in one instance been expressly decided by a justice of this court, that the plaintiff can not demur to an answer, unless it sets up a *counter claim* (Thomas agt. Plumb, 7 *How. Pr. R.* 57). The reason given in that case is in these words: "The 153d section of the Code settles this question, and only allows the demurrer in the cases above stated." With the utmost respect for the learned court that made this decision, I must beg leave to submit in opposition thereto, the opinion that section 153 does *not* settle the question, as is there stated. Moreover, I do not understand the law to have been, that an answer of the kind found in that case, was not demurrable at common law. On the contrary the books are full of cases

of demurrers to a plea for the reason that it *amounted* to the *general issue* without being in the established form.

But let us glance a moment at the consequences of such a sweeping rule. It is to be remembered, that if the construction claimed for section 153, in the case of Thomas agt. Plumb, is correct, no demurrer can be interposed to a denial, nor to *any new matter*, unless it constitutes a *counter claim*. Hence, if a defendant pleads payment, infancy, coverture, usury, duress, release, bankrupt's discharge, or any defence which goes merely to discharge the cause of action, the answer will not be demurrable, no matter how great or how slight the defects may be. If in setting up the statute of limitations the attorney happens to plead *non assumpsit infra sex annos,* where he should have pleaded *actio non accrevit,* &c., he is not to be put right by a demurrer, but he is to have judgment against him for pleading frivolously, or else the answer is to stand as forming a good issue.

It will be seen, however, by looking over our reports, that in *practice* we are constantly allowing demurrers to denials, or to matters which do not constitute a counter claim. The last case that I decided was one of demurrer to a denial in which no question was raised as to the correctness of the practice. I allude to Dimon vs. Bridges. I find two cases in No. 4 of the 7th of *Howard,* which have come to hand since the former part of this opinion was written. In the case of Bogardus the elder agt. Parker (7 *How. Pr. R.* 303), Justice MITCHELL allowed a demurrer to an answer which did not set up a counter claim, although it set up new matter. In Noxon agt. Bentley (7 *How. Pr. R.* 316), Justice HAND allowed a demurrer to an answer which did not set up any new facts, certainly not a counter claim. In Seward agt. Miller (6 *How. Pr. R.* 312), the answer was a mere *general denial.* Justice S. B. STRONG held that it should have contained a *specific* denial, and therefore it was *insufficient.* He held further that the answer could not be stricken out as sham, irrelevant or frivolous; and gave the *plaintiff leave to demur.* He closes his opinion with the following just remarks: " But in all cases of doubt, or where the insufficiency is from any other cause, the party objecting to it should resort to a demurrer, when

the point may be more deliberately considered and satisfactorily settled."

I am indeed consoled by the reflection, that, if I err in this matter, I am but following in the wake of these eminent and venerable jurists. In these revolutionary times, they naturally adhere to the great principles of good pleading, as the tempest-tossed mariners cling instinctively to the wreck of their dismasted ship, and when chart and compass have been swept away, still turn their eyes to the polar star, and struggle on through the darkness and gloom which is gathering around them.

Judgment for the plaintiff on demurrer, with leave to defendant to amend his answer on payment of costs.